WHITING, Respondent, *v.* CHICAGO, M. & ST. P. RY. CO., Appellant.

**1. Railroads—Gross Negligence—Evidence — Combustible Materials Near Track.**

On an issue of gross negligence, in an action for the loss by fire of certain goods in the warehouse of a railroad company, where it appeared the fire was caused by some burning packing that had been taken out of a "hot box" by train-men, and left a foot or two from a raised platform that extended to the warehouse, and it also appeared at the time that there was a strong wind blowing in the direction of the house from where the packing was, *held* permissible to show that there were combustible materials around and under the platform near where the packing was left.

**2. Same—Case for Jury.**

In an action against a railroad company for the value of certain goods burnt in its warehouse through alleged gross negligence, it appeared that train-men, at night, had taken burning packing out of a "hot box," and left it within two or three feet of a raised platform that extended to the warehouse; that under the platform, near the packing, were weeds, paper, and other combustible materials; that at the time a strong wind was blowing in the direction of the warehouse from where it had

been placed, and in about thirty minutes after a fire was discovered in that part of the platform where it had been left,—*held* a case for the jury.

(Argued May 16, 1887; reversed May 26; opinion filed February 20, 1888.)

Appeal from the district court of Lincoln county; Hon. C. S. PALMER, Judge.

*F. R. Aikens,* for respondent.

The jury are constituted the sole judges of the credibility of the witnesses and the value, force, and effect of their testimony. *Hipsley* v. *Kansas City R. Co.,* 4 West. Rep. 47; *Sioux City & Pacific R. Co.* v. *Stout,* 17 Wall. 657–665.

What constitutes negligence in a given exigency is generally a question for the jury. Where material facts are disputed, or inferences of fact are to be drawn, the case should be submitted to the jury. It is only when the precise measure of duty is determinate—the same under all circumstances—that the court can undertake to determine what is negligence. *Pittsburgh, O. & E. L. P. R. Co.* v. *Kane,* 6 Atl. Rep. 845, 5 Cent. Rep. 912; *Richardson* v. *Kier,* 34 Cal. 63.

What may be gross negligence in one case may not be so, in light of the particular facts, of another; and ordinary care in one state of the case may be very gross negligence in another and different case. *Northern Cent. R. R. Co.* v. *State,* 29 Md. 438.

Counsel for the appellant admits that the testimony of one witness tends to prove negligence. This is enough. If there was even the slightest proof of negligence, either positive or inferential, then it was a question of fact for the jury, and the court below would have erred in taking the case from the jury. *Sioux City & Pacific R. R. Co.* v. *Stout, supra; Caledonia Gold Mining Co.* v. *Noonan,* 3 Dak. 203, 14 N. W. Rep. 426; *Star Printing Co.* v. *Matthiesen,* Id. 237–239, 14 N. W. Rep. 107.

Had there been no wind, had the box been unpacked and the waste left in a less dangerous place, or had the wind been blow-

ing in a direction which would have taken the waste away from the building, the acts might have been devoid of carelessness; but it was proper for the jury to take every circumstance surrounding the case into consideration, and determine therefrom whether there was gross negligence. *Webb* v. *R. W. & O. R. R. Co.*, 49 N. Y. 429; Cooley, Torts, 632.

*H. H. Field* and *A. H. Barton*, for appellant.

The defendant contends that the evidence is entirely insufficient to establish gross negligence on the part of the defendant.

The law is well settled that, where the goods or baggage of a person are left in the custody of a common carrier simply for the accommodation of the owner, and without any agreement for compensation, the common carrier is bound only to exercise slight care, and is responsible only for gross negligence. *Minor* v. *C. & N. W. Ry. Co.*, 19 Wis. 40; *Van Gilder* v. *C. & N. W. Ry. Co.*, 44 Ia. 548; *Green* v. *Birchard*, 27 Ind. 483; *Brown* v. *Grand Trunk Ry.*, 54 N. H. 535; *Knowles* v. *Atlantic, etc. R. Co.*, 38 Me. 55; *O'Brien* v. *Vaill*, 1 South. Rep. 137.

Gross negligence on the part of a gratuitous bailee has generally been held, in legal effect, to be the same thing as fraud. Jones, Bailments, 46, 47; *Foster* v. *Essex Bank*, 17 Mass. 479; *National Bank* v. *Graham*, 100 U. S. 699, 702; *Bank* v. *Bank*, 70 N. Y. 278; *Tracy* v. *Wood*, 8 Mason, 132.

The rule laid down by Sir William Jones in his work on Bailments, 46, 47, 120–123, is that a gratuitous bailee is only liable for the exercise of slight care, and that, if he keeps the property bailed with the same care that he keeps his own, that is the measure of his responsibility; and he further says that, if he can show that his own property has been lost or destroyed in the same catastrophe in which his bailor's is lost, then he is presumptively discharged from all liability. Story, Bailments, 62–64, 183. See, also, 2 Kent, Com. 562; Schouler, Bailments, 42, 43, 45; Edwards, Bailments, 47; *Foster* v. *Essex Bank*, 17 Mass. 479, 500; *Coggs* v. *Bernard*, 2 L.

Raym. 915; 1 Smith, Lead. Cas. 284; *Spooner* v. *Mattoon*, 40 Vt. 300.

"Slight care or diligence is such as persons of ordinary prudence usually exercise about their own affairs of slight importance." Section 2100, Civil Code; *Whitney* v. *Bank*, 55 Vt. 155; *Clark* v. *Eastern R. Co.*, 139 Mass. 423; S. C. 1 N. E. Rep. 128; 21 Amer. & E. R. Cas. 307; *Fleming* v. *Northampton Nat. Bank*, 62 How. Pr. 177.

The fact that there was a slight accumulation of *debris* under the platform is of no consequence. The platform was a raised one, which is customary, and the evidence shows that there was but very little accumulation, and no more than is ordinarily found under buildings on the prairie, which are raised above the ground. The testimony shows that the waste was left upon the side of the track, some little distance away from the platform, and there was no proof that the employes of the defendant knew of the accumulation under the platform. Applying the rule that, where the verdict is clearly against the evidence and the law, it should be set aside, the motion for a new trial in this case should have been granted, and, failing in that, the judgment should be reversed. *Randall* v. *B. & O. R. R. Co.*, 109 U. S. 478, 3 Sup. Ct. Rep. 322; *Fleming* v. *Bank*, 62 How. Pr. 177; *Jourdan* v. *Reed*, 1 Iowa, 135.

PALMER, J.   This action was brought by plaintiff to recover the value of certain household goods, shipped from Chicago, via the defendant's railroad line, to Canton, Dak., in August, 1885. The goods were received by defendant's agent at Canton, and by him placed in defendant's depot or warehouse, where, on the 19th of August of the same year, they were destroyed by fire, the same fire consuming the defendant's depot and warehouse, with all its contents.

The action is brought against the defendant as warehouseman.

No question was made as to the value of the property. The only evidence in the case tending to show the character of the

bailment at the time the goods were destroyed, (whether as a bailment for hire, or gratuitous,) was from the plaintiff himself, who testified, in substance, as follows: "I know nothing of the origin of the fire. Cannot tell when the goods arrived at the depot. Think I went to depot on the 14th of August; the goods were there at that time. I saw Goetz, the station agent, and told him that my house which I had rented was not yet vacated, and I came to see if I could make some arrangement about storing the goods. I did not know just how long I would want him to take care of them for me, but perhaps a number of days. He said that they were quite busy now. He did not know just how it would be about it, but said he would take care of them, and that he would notify me in case he had to have the room. I think he said the freight was nearly twelve dollars; he could not find the freight bill then. I have not paid the freight yet. I told him it was of no consequence at all. I was ready to pay it, so I did not learn the exact amount. I saw the agent the next day; also the goods. I saw that they had not been put in very good shape. I asked him about it. He said that they got out some goods back of them that day, and that he would store them up in good shape for me, and in case he had to have the room he would notify me. I told the agent it would be an accommodation to me for him to store them. I knew the accommodation would cost me something; I supposed it would. There was nothing said as to any compensation between me and the agent,— no amount agreed upon. I made no promise to pay him anything. I did not agree to pay him anything. He did not tell me he should charge me anything. He told me at the time they were short of room at the depot. It was quite an accommodation. I told him I would have to pay rent somewhere else. I remember he agreed to keep them. There was nothing said as to pay. I did not ask the agent what the amount would be. I expected to pay the freight when I got the goods. I never paid any charge for storage to the agent. He never presented any bill. Nothing was said about it at all. I considered the storage of them there an accommodation to me, as I learned room

·was very scarce.   I knew I had to rent a room somewhere for storage.   It would be an accommodation, and would save me ·drayage."

Did this constitute a gratuitous bailment or deposit, *quære?*

The trial court held it to be a gratuitous deposit, and that the ·defendant was only bound to take "slight care" of the goods, .and was only responsible for "gross negligence."

The evidence tended to show that the fire occurred about midnight on the 19th day of August; that at the time a freight train ·from the east arrived at the station, stopped about 20 or 30 minutes, and moved on westward; that said freight train, when it arrived at the station, had what is known as a "hot box;" that the train-men, while stopping at the station, "unpacked and repacked the hot box;" that the track upon which the train was ·standing at the time was directly south of the depot; that the burning waste from the hot box was removed, and piled upon the .ground between the end of the ties towards the depot; and, as the ·conductor in charge of the train testified, "When I packed the box, I stood down between the box and the platform.   There was plenty of room—two and one-half or three feet—between ·the box and the platform."

A portion of this waste thus removed was placed back in the box, and the rest was left on the ground, where it was taken out, .and confessedly within 30 or 36 inches of the platform, which ·extended up to and connected with the depot and warehouse.

The evidence further disclosed the fact that the platform, at ·the point where the waste was deposited, was elevated above the .ground, and that old waste, paper, weeds, and rubbish generally, had been carried under it by the winds; that at the time the fire ·caught, a strong wind was blowing from the south, so that fire and burning shingles were carried north from the depot a distance of 60 or 80 rods; that the portion of waste left on the ground from the hot box was smoking when the train left the station; that the fire was first discovered in the platform at the point where the burning waste was deposited, and within 20 or .30 minutes thereafter.

Excepting the testimony relating to the character of the material called "waste," and its capacity to retain fire, and be fanned to a blaze by the wind, the above is the substance of the material testimony adduced at the trial.

Practically only two questions are presented by the assignments of error.

The first is to the ruling of the court in admitting the testimony of witnesses as to the condition of the ground around and under the platform at the point where the waste was deposited, and the fire originated.

The second relates to the refusal of the trial court to direct a verdict for the defendants, because of the insufficiency of the evidence to support a verdict of gross negligence against the defendant company.

Under the *first* assignment is presented the admissibility of the evidence offered to show that waste, weeds, old papers, and other highly imflammable material, were permitted by defendant's agents to accumulate around and under the platform at the point near where the burning waste was left on the ground.

In the absence of any other theory as to the origin of the fire, and with the undisputed evidence that a strong wind was blowing exactly in the direction of these combustibles, if they were there, it is very clear that this was competent evidence upon the issue of gross carelessness.

*Second.* Was the evidence sufficient to support the verdict? The trial court told the jury "that the railroad company can only be held liable, in a case like this, when goods are lost or destroyed through their gross negligence. Under the law of this territory there are three degrees of negligence mentioned, viz., slight, ordinary, and gross. Slight negligence consists in the want of great care and diligence; ordinary negligence is the want of ordinary care and diligence; and gross negligence is the want of slight care and diligence. It is only under and by virtue of the last provision which I have read in your hearing that the defendant in this action can be held liable. Unless you are satisfied from the evidence that the railroad company, in the

care and custody of these goods, were guilty of gross negligence; or, to state it conversely, if you find from the evidence that they did not exercise slight diligence and care, then they may be held liable," etc.  From the evidence presented by the record the defendants could certainly not complain of the rule of law thus laid down; and from all the evidence in the case we are of the opinion the trial court was justified in submitting the case to the jury, and we are not prepared to say from all the evidence that the jury were not warranted in finding that the acts of the defendant's agents and employes were grossly negligent.  The judgment must be affirmed.

All the justices concur.